UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL CARVALHO | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:17-cv-10723-PBS |
| JPMORGAN CHASE BANK, N.A. | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff herein through undersigned counsel, respectfully submits his Opposition to Defendant, JPMorgan Chase Bank, N.A. ("Defendant") Motion for Summary Judgment.

**INTRODUCTION**

While Defendant seeks to chastise the Plaintiff for attempting to cure the status of his mortgage, including cashing in a significant portion of his retirement monies to be applied to this loan, Defendant also conveniently omits to discuss its own actions which have led us to this unfortunate current situation before the Court. Defendant seeks to paint the color of Plaintiff as "ungrateful deadbeat", when such description could not be further from the truth. Plaintiff is a very hard-working citizen of this Commonwealth that only seeks to provide for his family and maintain the roof over their head. Flippant comments in the Defendant's Memorandum inferring that Plaintiff somehow harbors some plan to disregard obligations, or that he has some clandestine plan to avoid liability may play well to subliminally facilitate the ruling it desires, but this matter is far more complicated than Defendant would have this Court believe. Plaintiff undertook superhuman efforts to rectify his mortgage loan, including cashing in the great majority of his retirement savings to bring the loan current. Defendant has engaged in nothing

1

but obfuscation, delay, misleading and deceptive statements, as well as failing to provide any documentary evidentiary foundation as to what its claim of standing to be a real party in interest is premised upon to maintain any claim here. Defendant also failed to reference a Massachusetts Land Court case regarding the Massachusetts Quiet Title state law action, which holding contradict Defendant's cited First Circuit ruing's holding related to whether a mortgagor could maintain a Quiet Title Action.

The record upon summary judgment [including Plaintiff's Exhibits in support of this Opposition, at a minimum, create disputed material issues of fact related to the purported "owner" of the Plaintiff's "Loan". Indeed, the financial industry seeks to parse words related to mortgage documents, referring to the same as "Loan", "Mortgage Loan", "Note", and "Mortgage". Defendant steadfastly refused to answer Plaintiff's discovery requests related to this issue. Such nomenclature is materially relevant, as the financial industry utilizes reference to such terms to differentiate what particular documents it refers to, while at the same time remaining opaque and helping to obfuscate the glaring deficiency(s) of its evidentiary proffers. Defendant, like the rest of the financial industry does in these matters, also relies upon the concept of cognitive dissonance. Indeed, the hope is that but utilizing transformational vocabulary to sufficiently paint the borrower as the devious deadbeat that set forth a detailed plan to avoid his or her obligations, the road is easily paved for easy victory. The preceding is coupled with the fact that in these type cases, the $1,000.00 per hour financial industry counsel is usually "opposed" by an untrained pro-se litigant. This has led to many decisions being dismissed on the pleadings, which cases are thereafter held up as impenetrable placards to prevent any other argumentation (even where advancing completely different and clearly more developed theories of an entitlement to relief). To this end, undersigned did not pen the instant complaint, only making a belated appearance after Plaintiff had questions related to former counsel's approach

and/or availability, and also to prevent a Motion to dismiss for lack of prosecution. Thus, undersigned was left to pick up the pieces remaining from the existing complaint, and advance argument from the legally portions therefrom.[1] The record upon summary judgment leaves many relevant disputes as to materially relevant fact regarding the purported "ownership" of Plaintiff's Note, mortgage loan, loan, and/or mortgage. These issues, as well as others to be discussed below, marshal that Defendant's Motion should be denied, and/or for a ruling in the non-movant Plaintiff's favor on the basis that the record supports such ruling.

## DISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiff hereby refers to his Concise Statement of Material Facts in Support of his Opposition Motion for Summary Judgment ("Facts ¶_") filed herewith.

Plaintiff executed a note (the "Note") on October 22, 2003 in favor of First Horizon Home Loan Corporation ("First Horizon") in the amount of $167,925.00. Despite such "origination", the state of the current ownership of Plaintiff's Note, or "Loan" are less than clear, and infact the contradictory statements and proffers by Defendant present a myriad of material disputed fcts relative to such purported "ownership" Plaintiff Facts ¶ 2. To secure the Note, Carvalho granted a mortgage (the "Mortgage") on the Property. Facts ¶ 3. The fact that Mortgage was recorded in the Northern Bristol County Registry of Deeds at Book 12952, Page 290 in and of itself is irrelevant. Facts ¶ 3.

On February 28, 2009, the Mortgage was purportedly assigned to MetLife Home Loans, a Division of Metlife Bank, N.A. ("MetLife"), but said document also states that the note was was assigned therewith, which contradicts various statements and documents from Defendant identified within the record Defendant relies upon Affidavits referring to "business records" yet

---

[1] Although this Court has taken significant issue with undersigned's pleadings, they were advanced in good faith to change the state of existing Massachusetts state law that continues to be molded only by non-precedential federal court rulings thereon. The reason for the preceding is the fact that cases filed in the state court continue to automatically be removed bythe financial industry counsel to this court, this case included.

those records were never attached to said Affidavits, and therefore remain subject to a hearsay objection as the statements in the Affidavit were presented to prove the truth of the matter asserted under circumstances that preclude Plaintiff from challenging the legal viability of such purported out of court statement. The 2009 assignment to MetLife was recorded at the Northern Bristol Registry of Deeds at Book 18042, Page 11. Facts ¶ 4. On March 13, 2013, a document purports that MetLife assigned the Mortgage to JPMorgan Chase Bank, N.A. ("2013 Assignment"), yet fails to address the issue relative to the ownership of Plaintiff's note, [see *Eaton v. Fed. Nat'l Mortg. Ass''n*, 462 Mass. 569, at n. 10 (SJC 2012),.

## LEGAL STANDARD

"Summary judgment is only appropriate when there is no genuine issue as to any material fact and thus the moving party is entitled to judgment as a matter of law, see *Comeau v. Town of Webster, Mass.*, No. 11-40208-TSH, 2014 WL 1330850, *3 (D. Mass. Mar. 31, 2014). It is the moving party's responsibility to identify the portions of the record which it believes demonstrate the absence of such a genuine issue. *Id.* The moving party may show that it is entitled to summary judgment by either offering disproving evidence *or* by "demonstrating an absence of evidence to support the non- moving party's case." *Id.* (quoting *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005)). The moving party must make a showing of no dispute as to material facts, See *In re Dunn*, 2007 WL 8027259, *3 (D. Mass. Feb. 27, 2007) If the defendant fails to meets this initial burden to present undisputed material facts and/or demonstrate the absence of disputed material fact, summary judgment may not enter.

## ARGUMENT

I.   **THE RECORD ESTABLISHES THAT THERE ARE SIGNIFICANT MATERIAL ISSUES REMAINING IN DISPUTE AS TO THE OWNERSHIP OF PLAINTIFF'S NOTE AND/OR LOAN**

Unlike Defendant's dismissive description of Plaintiff's allegations and the state of

Massachusetts law, the record clearly leaves numerous questions of material fact regarding Defendant's unsupported "claims". Indeed, Defendants repeatedly state that "Fannie Mae owns Plaintiff's "loan", there is not one scintilla of documentary legal supportive indicia to support such claim. During discovery, Plaintiff's directed materially relevant discovery requests related to the various positions and/or statements that the Defendant has made with respect to the ownership of Plaintiff's loan.

Defendant posits that it is a "mortgage servicer" that "holds the note and mortgage" for Fannie Mae as owner. Thus, Defendant claims to act as an "agent" for a purported principal, but cannot identify precisely what legal foundational documentary evidence supports such claim of "ownership" by Fannie Mae. Defendant errantly seeks to rely upon the assumption that a "holder" of a brearer instrument could enforce the note in its "possession", however such position is incorrect on numerous levels. First, Defendant's fail to explicate precisely what role "Fannie Mae" claims as "owner", or how such ownership took place. Such examination is materially relevant where Defendant only claims authority to act as an "agent" mortgage servicer, not "owner".

    **A. Defendant's Refusal To Respond To Relevant Discovery Requests Leaves The Ownership of Plaintiff's Note A Remaining Disputed Material Fact**

The record reveals that Plaintiff has been repeatedly informed that Fannie Mae [individually] is the "investor", and/or "owner" of his loan. Thus, it would be a materially relevant discovery request to learn what the definition of such term would mean with regard to the claimed "owner" of his loan.

Plaintiffs propounded document discovery requests to Defendants, in which their responses included email correspondence directly from Fannie Mae to Plaintiff stating that the "mortgage loan was transferred to Fannie Mae as of 11/01/2003", see Plaintiff's Exhibit in support of this Opposition to Summary Judgment at CSJR-015. Based upon this admission from Fannie Mae,

Plaintiff further propounded related discovery requests related to this 11/01/2003 date stated by Fannie Mae to Defendant that were either evasive or completely ignored, see Plaintiff's Exhibit in support of his Opposition to Summary Judgment; Admissions at CSJR-033-34, [No. 1, 2, 3] CSJR-035 [No. 4, 5, 6]; see also Interrogatories at CSJR-047-48 [No. 8, 9, 10], CSJR-049 [No. 11, 12, 13] CSJR-050 [No. 14, 15]; CSJR-052 [No. 20]; CSJR-053 [No.23, 24]. The preceding requests are materially relevant where there remains a factual dispute as to the "ownership" of Plaintiff's note. Such disputed issues evidenced in the record include but are not limited to the fact that Defendant admits it acts on behalf of "Fannie Mae", see Admission No. 6, CSJR-034. Thus, Defendant purports to be an agent of Fannie Mae.

Despite the preceding, Defendant refuses to respond on the basis that Fannie Mae is a "non-party". Defendant appears to claim that it is an instrumentality of Fannie Mae, and therefore would be imputed to have knowledge of the foundation of the "mortgage loan" that it purports to service on behalf of Fannie Mae, yet at the same time seeks to obstruct materially relevant discovery requests

1. **Defendant Relies Upon Two Unsupported Affidavits Under a R. 56 Motion That Refer To Documents Outside The Record To Prove The Truth of The Matter Asserted, Which Statements Would Be Inadmissible at Trial.**

The Defendant seeks to rely upon a purported "Affidavit" of Nicole Smiley [see ECF Doc.#66-17]. In this purported Affidavit [submitted to prove the truth of the matter], Ms. Smiley specifically makes reference to the following:

> [✓] Based on my review of the business records of Chase, I certify that as of this date, JPMorgan Chase Bank, National Association is authorized by the holder of the promissory note secured by the above Mortgage to conduct the foreclosure sale.

In Admission and Interrogatory responses, Defendant repeatedly drew a distinction as to its status as the "holder" of the Note, and Fannie Mae's status as purported "owner", see Defendant's response to Admission No. 1, at Exhibit attached to this Opposition at CSJR-034

6

Subject to and without waiving any objections, Defendant responds as follows: Defendant admits that Federal National Mortgage Association owns the Note. Defendant further answers by stating that Plaintiff executed a Note (the "Note") dated October 22, 2003 in favor of First Horizon Home Loan Corporation ("First Horizon") in the amount of $167,925.00. To secure the Note, Plaintiff granted a Mortgage (the "Mortgage") on the Property. The Mortgage was assigned to MetLife Home Loans, a Division of Metlife Bank, N.A. ("MetLife") via Assignment of Mortgage dated February 28, 2009 ("2009 Assignment"). MetLife Bank, National Association also known as Metlife Home Loans assigned the Mortgage to JPMorgan Chase Bank, National Association ("2013 Assignment") via a Massachusetts Assignment of Mortgage dated March 13, 2013. In March 2013, Chase assumed responsibility for servicing the Mortgage. Chase continues to be the mortgage servicer for this loan and is the holder of the Note. Federal National Mortgage Association is the owner of the Note. On April 10, 2014, Plaintiff executed a Loan Modification Agreement (the "2014 Loan Modification").

Thus, Smiley relies upon "business records" [not in evidence] that "J.P. Morgan Chase Bank, N.A. is authorized by "the holder" [not owner] of the Note to conduct foreclosure proceedings, Defendant clearly states repeatedly that it is only a "mortgage servicer" (agent) for "Fannie Mae" See Admission Resp. No. 2 [CSJR-034]; No. 3, No.4, No. 6 [CSJR-035]; No. 7, No. 8 No. 9 (Chase denies it is the owner of the note) [CSJR-036]; No. 11, No 12 [CSJR-037]., No. 19, No. 20 [CSJR-039]; No. 21, No. 22, No. 23 [CSJR-040]. Quite tellingly Defendant admits that it does not own the Plaintiff's note, again see Response to Admission No. 9 [CSJR-036]. Thus, the purported Affidavit only states that Chase can act for a "holder" [that specifically disclaims ownership of the Plaintiff's Note].

Additionally, the Defendant seeks to rely upon a purported "Affidavit" of Evan L. Grageda [see ECF Doc.#66]. In this purported Affidavit; Grageda also purports to rely upon "business records of Chase stating:

> "I am an authorized signer at JPMorgan Chase Bank, N.A. ("Chase"). As part of my duties and responsibilities, I have access to Chase's books and records that are maintained by Chase in the ordinary course of its business, including records, books, and statements of account relating to the mortgage loan (the "Loan") of Plaintiff Michael Carvalho ("Plaintiff') with respect to real property known as 279 Fairview Avenue, Rehoboth, Massachusetts 02769 (the "Property"). I have personally reviewed the relevant records in Chase's possession relating to this Loan and have reviewed all of the documents referenced in this Affidavit. I declare under penalties of perjury that the facts set forth in this Affidavit are true and correct and that all Exhibits referenced in and attached to this Affidavit are true and accurate copies of documents maintained by Chase.

7

Plaintiff executed a Note (the "Note") dated October 22, 2003 in favor of First Horizon Home Loan Corporation ("First Horizon") in the amount of $167,925.00. A redacted, but otherwise true and correct copy of the Note is attached to the Appendix as Exhibit A."

Nothing within this statement established any foundation to support the claim that Fannie Mae owns Plaintiff's Note. Defendant admits that it is not the "owner" of Plaintiff's Note. This clearly leaves material issues in dispute as to the current status of ownership and right of enforcement to Plaintiff's Note.

### 2. Defendant Fails To Identify In What Purported Role Fannie Mae Claims "Ownership" of Plaintiff's Note, And/Or "Loan"

Indeed, Defendant repeatedly refers to "Fannie Mae" in the singular, inferring that Plaintiff's Note or Loan is purportedly owned by this singular entity. Plaintiff propounded discovery requests to Defendant related to this precise issue, which were completely ignored and received no meaningful response as being deemed "irrelevant". Plaintiff requested the precise definition of Fannie Mae's claim to be the "Investor" of Plaintiff's loan, see Interrogatory No. 20 at Exhibit attached to this Opposition at [CSJR-052]

> **Interrogatory No. 20:** Identify the meaning of "Investor" as it specifically relates to FNMA's claim of the right to receive payment from Plaintiffs Note, and as identified upon the face of the assignment recorded upon Plaintiffs title on April 27, 2009, at the Bristol County Registry of Deeds at Book 18042, Page 1I.
>
> **RESPONSE:** In addition to the General Objections stated above, Defendant objects to Interrogatory No. 20 because it is not reasonably calculated to lead to the discovery of admissible evidence, is not proportional to the issues at stake in the litigation pursuant to Rule 26, is unduly burdensome, seeks information which is irrelevant to the issues raised in the Complaint, and seeks a legal conclusion.

Compare correspondence sent to Plaintiffs, see Feb. 27, 2017 letter sent by Defendant to Plaintiffs, at Exhibit attached to this Opposition at CSJR-002 [identifying "Fannie Mae" as the "Investor"]; a "Borrower Information" page produced by Defendants in discovery, identifying

8

"FNMA MBS Express" as the "Investor" [see Exhibit attached to this Opposition at CSJR-004]. Plaintiff has also attached a Fannie Mae Glossary of Definitions identifying that FNMA MBS Express refers to "mortgage pools" involving the issuance of "MBS" [Mortgage Backed Securities], [see Exhibit attached to this Opposition at CSJR-022]. Thus, there remains a dispute as to what purported role Fannie Mae occupies as the alleged "owner" of Plaintiff's Loan, and/or "Loan". The Borrower Information page produced by Defendant itself, clearly places the purported ownership with Fannie Mae occupying a role in an "MBS pool offering (i.e. not an individually owned asset).

3. **The Remaining Factual Disputes Regarding The Ownership of Plaintiff's Note Also Create Material Issues In Dispute As To The Defendant's Claim That Its Is A Real Party In Interest To Enforce The Mortgage Contract Under G.L. c. 244, §14**

Defendant states that it is entitled to a "statutory presumption of the validity of the "assignment". Regardless of the veracity of that statement, Plaintiff's have identified documentary support within the summary judgment record that has rebutted any "statutory presumptive validity of the assignment". Indeed, if Defendant relies upon mere recordation of the assignment to provide the legal sufficiency of this purported document, such reliance would be tragically misplaced, see *Bevilacqua v. Rodriguez*, 460 Mass. 762, 771 (SJC 2011):

> "...there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. See S & H Petroleum Corp. v. Register of Deeds for the County of Bristol, 46 Mass. App. Ct. 535, 537 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function . . ."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G. L. c. 183, § 4 (leases and deed); G. L. c. 203, §§ 2-3 (trust documents). Recording is not sufficient in and of itself, however, to render an invalid document legally significant. See Arnold v. Reed, 162 Mass. 438, 440 (1894); Nickerson v. Loud, 115 Mass. 94, 97-98 (1874) ("mere assertions . . . whether recorded or unrecorded, do not constitute a cloud upon title, against which equity will grant relief"). As a result, it is the effectiveness of a document that is controlling rather than its mere existence. See

Bongaards v. Millen, 440 Mass. 10, 15 (2003) (where grantor lacks title "a mutual intent to convey and receive title to the property is beside the point"). The effectiveness of the quitclaim deed to Bevilacqua thus turns, in part, on the validity of his grantor's title. Accordingly, a single deed considered without reference to its chain of title is insufficient to show "record title" as required by G. L. c. 240, § 1."

Indeed, where the precise contour of the ownership of Plaintiff's Note is clearly in dispute, leaves the Defendant as "mortgage holder" only. The Massachusetts Supreme Judicial Court has opined that the holder of the mortgage (singly) is the possessor of "nothing of value", see Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 577-579 (2012):

"...Young v. Miller, 6 Gray at 154 (where indorsee of note is without assignment of mortgage securing the note, "the law may well imply the intention of the parties that the mortgage is thenceforth to be held by the mortgagee in trust for the indorsee. In other words, such a transaction might manifest a resulting trust"); Sanger v. Bancroft, 12 Gray 365, 367 (1859) ("A mortgage cannot be made available without connecting it with the debt or duty secured thereby. To one who has not the debt, it is of no value as property, as it could at most be only resorted to as a trust for the benefit of the holder of the note"). See generally 1 F. Hilliard, Mortgages at 216 n.(c) ("The assignment of a mortgage, without the debt, creates at most a *naked trust*" [emphasis in original]); id. at 217 ("[The mortgage] has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond"). Consistent with the principles just described -- that is, the basic nature of a mortgage as security for an underlying mortgage note, and the role of a "bare" mortgagee as equitable trustee for the note holder -- it appears that, at common law, a mortgagee possessing only the mortgage was without authority to foreclose on his own behalf the mortgagor's equity of redemption or otherwise disturb the possessory interest of the mortgagor. See Howe v. Wilder, 11 Gray 267, 269-270 (1858) (former assignee of mortgage note and mortgage who had retransferred note and canceled unrecorded mortgage assignment might still hold technical legal title to mortgage property as mortgagee but has no equitable right to disturb mortgagor's possessory interest and cannot bring action to foreclose mortgagor's equity of redemption because no money is due from mortgagor to him; only mortgagee with interest in underlying debt can so enforce mortgage). See also Wolcott v. Winchester, 15 Gray at 465 ("As a purchaser [of a mortgage without the underlying note], [defendant] must have known that the possession of the debt was essential to an effective

```
mortgage, and that without it he could not maintain an action to
foreclose the mortgage"). Cf. Weinberg v. Brother, 263 Mass. 61,
62 (1928)."
```

### 4. Defendant's Reliance Upon G.L. c. 183, §54B Is A Red Herring

Defendant seeks to rely upon G.L. c. 183, §54B to somehow automatically provide legal validity of the purported "assignment" that it allegedly relies upon, This statute was enacted, and direct to, acts undertaken by agents to act on behalf of a principal. Thus, in order fornthis statute to have operative effect, there must first be established that there is a a principal with legally verifiable legal rights to act, in order that the agent could act therefore. Indeed the statute references this concept:

```
Section 54B: Mortgage discharge, release, assignment, foreclosure,
etc.; execution before officer entitled to acknowledge
instruments; effect

Section 54B. Notwithstanding any law to the contrary, (1) a
discharge of mortgage; (2) a release, partial release or
assignment of mortgage; (3) an instrument of subordination, non-
disturbance, recognition, or attornment by the holder of a
mortgage; (4) any instrument for the purpose of foreclosing a
mortgage and conveying the title resulting therefrom, including
but not limited to notices, deeds, affidavits, certificates,
votes, assignments of bids, confirmatory instruments and
agreements of sale; or (5) a power of attorney given for that
purpose or for the purpose of servicing a mortgage, and in either
case, any instrument executed by the attorney-in-fact pursuant to
such power, if executed before a notary public, justice of the
peace or other officer entitled by law to acknowledge instruments,
whether executed within or without the commonwealth, by a person
purporting to hold the position of president, vice president,
treasurer, clerk, secretary, cashier, loan representative,
principal, investment, mortgage or other officer, agent, asset
manager, or other similar office or position, including assistant
to any such office or position, of the entity holding such
mortgage, or otherwise purporting to be an authorized signatory
for such entity, or acting under such power of attorney on behalf
of such entity, acting in its own capacity or as a general partner
or co-venturer of the entity holding such mortgage, shall be
binding upon such entity and shall be entitled to be recorded, and
no vote of the entity affirming such authority shall be required
to permit recording.
```

Thus, unlike previous case decisions exmamining this issue, Plaintiff has raised the

11

specter of the disputed ownership of the Plaintiff's note, which issue impacts the ability of the Defendant [not the individual signatory] to act for the owner of Plaintiff's loan. Thus, the issue before this Court has no application under G.L. c. 183, §54B. Therefore, Plaintiff challenges the Defendant "qua mortgagee", creating claims related to a void, not "voidable" assignment.

II. **DEFENDANT FAILS TO CITE TO A RECENT MASSACHUSETTS LAND COURT DECISION THAT AFFIRMS A MORTGAGOR'S ABILITY TO UTILIZE THE QUIET TITLE STATUTE**

Defendant cites to *Rezende v. Ocwen Loan Servicing, LLC*, 869 F.3d 40, 43 (1st Cir. 2017) (quoting *Daley v. Daley*, 300 Mass. 17, 14 N.E.2d 113, 116 (1938)). For the proposition that a "mortgagor lacks standing to file a quiet title action". The entirety of the discussion in Rezendes regarding this issue was as follows:

> "With respect to count V (quiet title), the district court properly found that Rezende lacked standing. A mortgagor lacks standing to bring a quiet title action as long as the mortgage remains in effect. See, e.g., Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 412 (D. Mass. 2012), abrogated on different grounds by Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282 (1st Cir. 2013); Flores v. OneWest Bank, F.S.B., 172 F. Supp. 3d 391, 396 (D. Mass. 2016), appeal docketed, No. 16-1385 (1st Cir. Apr. 8, 2016). This is because under Massachusetts law, a quiet title action "cannot be maintained unless both actual possession and the legal title are united in the plaintiff," Daley v. Daley, 14 N.E.2d 113, 116 (Mass. 1938), yet "a 'mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains."' Bevilacqua v. Rodriguez, 955 N.E.2d 884, 894 (Mass. 2011) (quoting Maglione v. BancBoston Mortg. Corp., 557 N.E.2d 756, 757 (Mass. App. Ct. 1990)). Rezende's assertion that Defendants bear responsibility for his default is irrelevant: what matters is the existence of a mortgage, not whether the underlying loan is in default."

But see *Barrasso v. New Century, et. al.,* Ca. No. 12 MISC 461715, (Land Ct 2015) LC Reporter 23 LCR 247 , see also Exhibit attached to this Opposition at CSJR-056, 058:

> This is a pre-foreclosure action brought to quiet title under G L. c. 240, §§ 6-10. Unlike the try title statute, G L. c. 240, §§ 1-5, as recently interpreted by our Supreme Judicial Court in *Abate* v. *Fremont Investment & Loan, 410* Mass. 821 (2015), **there is no jurisdictional requirement to plead record title and an adverse**

12

> <u>claim under section 6 of chapter 240. Instead, it "shall be sufficient that [defendants] claim or may claim by purchase, descent or otherwise, some right, title, interest or estate in the land which is the subject of the action and that their claim depends upon the construction of a written instrument or cannot be met by the plaintiffs without the production of evidence.</u>'' G L. c. 240, § 6. <u>The jurisdictional requirements of the quiet title statute are satisfied where there is uncertainty as to who holds a mortgage but no dispute as to the existence of that mortgage, because all that is required is that a defendant "claim or may claim ... some right, title, interest or estate in the land ...</u> "Id. Here, that requirement is satisfied because U.S. Bank claims to hold a first mortgage on the property, and Deutsche Bank claims to hold a second mortgage on the property. This result is entirely consistent with *Abate, supra,* at 835, which notes, "a property owner has other, and perhaps more suitable, remedies available to him or her." See, e.g., G. L. c. 231A, §§ 1-9 (declaratory judgment); G L. c. 240, §§ 6-10 (action to quiet title)[.]"

With all due respect to the First Circuit, Plaintiff provides a decision from the Massachusetts Land Court which rebuts the finding made by the First Circuit (which did not consider or cite to the Barrasso ruling) under authority of Fed. R. Civ. P., R. 11(b)(2). Both Court's are not the final authority of this issue of Massachusetts state law, however, the Land Court would appear to have a bit more familiarity with this subject of Massachusetts real property law. Therefore, Plaintiff also states that the issues regarding the unknown ownership of Plaintiff's Note also leave factual issues in dispute relative to Plaintiff's Quiet Title Count.

**III. PLAINTIFF REPEATEDLY TRIED TO REHABILITATE THE INSTANT MORTGAGE LOAN IN WHICH THE DEFENDANT CONTINUALLY OBSTRUCTED ANY SUCCESSFUL OUTCOME.**

While Plaintiff may have fallen behind on his mortgage obligation, he most certainly did not seek to avoid payment, but rather quite the contrary. Plaintiff went so far as to cash in a significant portion of his retirement savings in an effort to bring the mortgage loan current. Defendant seeks to characterize the delay n payments as not receiving any monies at all prior to the complete non-payment status. In fact, Plaintiff made the majority of those payments, but they were not applied timely, thus Defendant claims breach upon the timing of payment not non-payment. After numerous attempts to rectify this situation, Plaintiff could see that Defendant had no intention of helping facilitate an

13

outcome tht would let him remain in his family home, and thereafter he sought the services of his former counsel to defend this matter.

## **CONCLUSION**

WHEREFORE, Chase respectfully requests that this Honorable Court:

    A.    Enter an Order Denying Chase's Motion for Summary Judgment;

    B.    Award Plaintiff any and all other relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/Glenn F. Russell, Jr.
Glenn F. Russell, Jr.
BBO#656914

38 Rock Street, Suite 12
Fall River, MA 02720
Phone: (508) 324-4545
Fax:    (508) 938-0244
Email: russ45esq@gmail.com

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this 14th day of December 2018, the foregoing document was filed through the CM/ECF system. The document will be sent electronically to the registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

*Attorneys for Defendant,*
JPMorgan Chase Bank, N.A.,

Matthew J. Libby, Esq.,
One Financial Center, 15th Floor
Boston, MA 02111

                                              */s/ Glenn F. Russell, Jr.*
                                              Glenn F. Russell, Jr.