```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


_____
                                    )
MICHAEL CARVALHO,                   )
                                    )
               Plaintiff,           )
                                    )     Civil Action
          v.                        )     No. 17-10723-PBS
                                    )
JPMORGAN CHASE BANK, N.A.,          )
                                    )
               Defendant.           )
_____)
```

## MEMORANDUM AND ORDER

April 30, 2019

Saris, C.J.

### INTRODUCTION

Plaintiff Michael Carvalho has sued Defendant JPMorgan Chase Bank, N.A. ("Chase") for claims arising out of a mortgage on a property in Rehoboth, Massachusetts. Carvalho executed a note and mortgage on the property in 2003 and received a loan modification from Chase in April 2014. Since June 2014, he has failed to make timely payments on his mortgage, and he stopped making any payments in July 2015. In light of his default, Chase foreclosed on the property in May 2018. Carvalho alleges Chase (1) "cancelled" the loan modification; (2) induced him to make mortgage payments in reliance on the loan modification; and (3) lacked standing to foreclose on his home.

1

After hearing, the Court **ALLOWS** Chase's motion for summary judgment (Docket No. 61).

## BACKGROUND

The following facts are undisputed, except where otherwise noted.

Carvalho purchased the property located at 279 Fairview Avenue, Rehoboth, Massachusetts in 1999. On October 22, 2003, he executed a note in the amount of $167,925 in favor of First Horizon Home Loan Corporation ("First Horizon"). On the same day, he granted First Horizon a mortgage on the property to secure the note.

On February 28, 2009, First Horizon assigned the mortgage to MetLife Home Loans ("MetLife"). MetLife subsequently assigned the mortgage to Chase on March 13, 2013. In addition to holding the mortgage, Chase states it services the note on behalf of the Federal National Mortgage Association ("Fannie Mae").

In October 2013, Carvalho submitted a request for mortgage assistance to Chase. In response, Carvalho and Chase executed a loan modification agreement in April 2014. The loan modification provided Carvalho with a lower monthly payment and longer amortization period. In exchange for these more favorable terms, Carvalho promised to make monthly payments of principal and interest beginning on May 1, 2014.

Carvalho started to miss timely and full loan payments in June 2014, a month after the loan modification went into effect. He submitted another request for mortgage assistance on October 5, 2014, along with a letter two weeks later in which he asked for another loan modification with a lower interest rate and forgiveness for his delinquent payments. He continued to miss payments and stopped paying altogether in July 2015. He alleges that he received notice at some point between June 2014 and July 2015 that Chase had "cancelled" the 2014 loan modification. Chase claims it has no record of cancelling the modification.

On June 1, 2016, Chase sent Carvalho notice of its intent to foreclose. Chase held a foreclosure auction on May 29, 2018 after Carvalho failed to cure his default. Hanscom Federal Credit Union purchased the property at the foreclosure sale for $225,000.

On March 24, 2017, Carvalho sued Chase in state court. His complaint includes five causes of action: (1) breach of contract and breach of the covenant of good faith and fair dealing, (2) promissory estoppel, (3) lack of standing to foreclose, (4) quieting title, and (5) declaratory judgment and injunctive relief. Chase removed this action to federal court on April 25, 2017. After discovery, Chase moves for summary judgment on all Carvalho's claims.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). A material fact is one with the "potential of changing a case's outcome." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018). "The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." Carlson v. Univ. of New Eng., 899 F.3d 36, 43 (1st Cir. 2018).

The burden on a summary judgment motion first falls on the movant to identify "the portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any genuine issue of material fact." Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). The movant can meet this burden "either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" Rakes v. United States,

4

352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986))). If the movant meets this "modest threshold," the burden shifts to non-movant to "point to materials of evidentiary quality" to demonstrate that the trier of fact could reasonably resolve the issue in his favor. Irobe, 890 F.3d at 377. Summary judgment is inappropriate if the non-movant identifies "'significantly probative' evidence favoring his position. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

## DISCUSSION

### I. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing (Count I)

Carvalho alleges that Chase committed breach of contract by "cancelling" the 2014 loan modification (Count I). A successful breach of contract claim requires the plaintiff to show that there was a valid contract between the parties, that he "was ready, willing, and able to perform his . . . part of the contract," and that the defendant breached the contract and caused him harm. Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016). There is no dispute that the 2014 loan modification was a valid contract.

Chase argues that the record is devoid of any evidence that it cancelled the loan modification. According to an authorized signer who reviewed Carvalho's file, Chase has no record of ever

5

doing so. For his part, Carvalho has provided inconsistent accounts of how he knows that the modification was cancelled. He has variously explained that he received a letter cancelling the modification in July 2014, was told that Chase was cancelling the modification by a Chase representative in July 2015, and was informed by a loan officer that the loan no longer appeared on his credit report.

Even if Chase did cancel the modification, however, the undisputed facts demonstrate that Carvalho was not "ready, willing, and able to perform his . . . part of the contract." Bulwer, 46 N.E.3d at 39. Carvalho stopped making complete and timely payments on his loan in June 2014, before he alleges Chase cancelled the modification. Carvalho's nonpayment shows that he was not "in a position to obtain the benefit of the contract, but for the breach." Frostar Corp. v. Malloy, 823 N.E.2d 417, 428 (Mass. App. Ct. 2005).

Carvalho's claim that Chase breached the covenant of good faith and fair dealing fails for the same reason. "The covenant of good faith and fair dealing 'requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" Buffalo-Water 1, LLC v. Fid. Real Estate Co., 111 N.E.3d 266, 279 (Mass. 2018) (quoting T.W. Nickerson, Inc v. Fleet Nat'l Bank, 924 N.E.2d 696, 704 (Mass. 2010)). Carvalho

6

had no right to his lower monthly payments once he failed to make complete and timely payments. Furthermore, Carvalho provides no evidence to support his vague allegation in the complaint that Chase representatives gave him faulty information about the amount he owed on his loan. Chase is therefore entitled to summary judgment on Count I.

**II. Promissory Estoppel (Count II)**

In Count II, Carvalho seeks to recover via promissory estoppel, alleging that Chase's offer of the 2014 loan modification induced him to make monthly payments. Because Carvalho and Chase entered into an enforceable contract, he does not have a cognizable claim for promissory estoppel. See <u>Malden Police Patrolman's Ass'n v. Malden</u>, 82 N.E.3d 1055, 1064 (Mass. App. Ct. 2017). Furthermore, a claim for promissory estoppel requires "an act or omission . . . in reasonable reliance on the representation." <u>Anzalone v. Admin. Office of Trial Court</u>, 932 N.E.2d 774, 786 (Mass. 2010) (quotation omitted). Carvalho did not act in reliance on Chase's promise of a loan modification. Instead, he almost immediately stopped paying his loan payments in full and on time. Accordingly, the Court grants Chase summary judgment on Count II.

**III. Lack of Standing to Foreclose (Count III)**

In Count III, Carvalho claims Chase lacked standing to foreclose on his property. A valid foreclosure by power of sale

requires that the foreclosing party hold the mortgage and also either own the note or act on behalf of the owner of the note. Galiastro v. Mortg. Elec. Registration Sys., Inc., 4 N.E.3d 270, 275 (Mass. 2014). There is no dispute Chase holds the mortgage via an assignment from MetLife, who received the mortgage via assignment from First Horizon. Carvalho alleges in his complaint that the 2013 assignment is void because a power of attorney was not recorded prior to assignment. There is no such requirement, and Carvalho's citation to Ramos v. Jones, No. 13 MISC 479025(AHS), 2015 WL 653260 (Mass. Land Ct. Feb. 12, 2015), is inapposite.

Carvalho also alleges in his complaint that the foreclosure was invalid because Fannie Mae, not Chase, owns the note. Since Massachusetts law allows a mortgagee to foreclose as long as it has authorization from the owner of the note, see Galiastro, 4 N.E.3d at 275, he opposes summary judgment by arguing instead that Chase has failed to put forth sufficient evidence to demonstrate that Fannie Mae owns the note and has authorized Chase to foreclose on the property.

In support of its motion for summary judgment, Chase submitted an affidavit from a vice president that was filed with the registry of deeds and indicates that Chase was authorized by the owner of the note to foreclose. Such an affidavit is one way for a foreclosing mortgage holder to prove it is acting on

behalf of the owner of the note. See Rice v. Wells Fargo Bank, N.A., 2 F. Supp. 3d 25, 33 (D. Mass. 2014); Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1133 n.28 (Mass. 2012). Chase also produced an affidavit from an authorized signer based on his review of Carvalho's file that states that Chase services the note on behalf of Fannie Mae, the owner of the note. Carvalho assails this latter affidavit for lacking the underlying documentation, but "no evidentiary rule prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation." Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 34 (1st Cir. 2011) (cleaned up). Finally, Carvalho admitted in the complaint that Fannie Mae owns the note and at his deposition that Chase has serviced his mortgage loan. Chase's evidence of Fannie Mae's ownership of the note is sufficient to meet its initial burden on summary judgment.

Carvalho tries to create a genuine dispute of material fact by pointing to inconsistencies in the record about Fannie Mae's relationship to the note. Chase has variously described Fannie Mae as the note's "owner," "holder," and "investor," but Carvalho gives no reason to believe these terms have different meanings in this context. See Eaton, 969 N.E.2d at 1121 n.2 (using "the term 'note holder' . . . to refer to a person or entity owning the 'mortgage note'"). Although Chase's documents

sometimes refer to the owner as "FNMA MBS Express," this entity is indisputably part of Fannie Mae. The 2009 assignment of the mortgage to MetLife purports to assign the note as well, even though Fannie Mae told Carvalho it acquired the note on November 1, 2003. The 2009 assignment appears to be on a form document, however, and does not specifically refer to Carvalho's note. Finally, Chase's failure to respond to discovery requests about Fannie Mae and ownership of the note does not raise a genuine dispute. If Carvalho was displeased with Chase's response, he should have moved to compel. In sum, Carvalho puts forth only "unsupported speculation" that Fannie Mae does not own his note, which is insufficient to create a genuine dispute of fact. <u>Velázquez-Pérez v. Developers Diversified Realty Corp.</u>, 753 F.3d 265, 270 (1st Cir. 2014) (quoting <u>Triangle Trading Co. v. Robroy Indus., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999)).

Because there is no genuine dispute that Fannie Mae owns the note and that Chase holds the mortgage and is authorized to service the loan on Fannie Mae's behalf, Chase is entitled to summary judgment on Count III.

**IV. <u>Quieting Title (Count IV)</u>**

In Count IV, Carvalho seeks to quiet title on the basis that the assignment of the mortgage to Chase and the subsequent foreclosure were invalid. A plaintiff must have "both actual possession and the legal title" to maintain a quiet title

action. Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017) (quoting Daley v. Daley, 14 N.E.2d 113, 116 (Mass. 1938)). Under Massachusetts law, "when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home." U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 51 (Mass. 2011). Legal title to the property rests with the mortgagee. Id. Accordingly, "a quiet title action is not an avenue open to a mortgagor whose debt is in arrears." Flores v. OneWest Bank, F.S.B., 172 F. Supp. 3d 391, 396 (D. Mass. 2016) (quoting Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 412 (D. Mass. 2012)). It is undisputed Carvalho has not paid off his mortgage and stopped making his monthly payments in 2014. He does not have legal title to the property and cannot maintain a quiet title action.

Carvalho's argument that a mortgagor actually does has standing to bring a quiet title claim is without merit. He cites to Barrasso v. New Century Mortgage Corp. for the proposition that "there is no jurisdictional requirement to plead record title" in a quiet title claim. No. 12 MISC 461715(HPS), 2015 WL 1880559, at *4 (Mass. Land Ct. Apr. 14, 2015), aff'd in part and vacated in part, 69 N.E.3d 1010 (Mass. App. Ct. 2017). This discussion in Barrasso concerned the requirements for jurisdiction over a defendant in a quiet title action, not the

standard for a plaintiff's standing. Id. Chase is therefore entitled to summary judgment on Count IV.

## V.     **Declaratory Judgment and Injunctive Relief (Count V)**

Carvalho's final claim seeks a declaratory judgment and injunctive relief (Count V). He does not claim any substantive basis for this request other than the claims set forth in Counts I through IV. Declaratory and injunctive relief are remedies, not independent causes of actions. See, e.g., Mass. State Police Commissioned Officers Ass'n v. Commonwealth, 967 N.E.2d 626, 631 n.9 (Mass. 2012) (noting that Massachusetts Rule of Civil Procedure 65 "establishes a procedure for seeking an injunction that requires a separate legal basis"). Accordingly, Chase is entitled to summary judgment on Count V.

### ORDER

Chase's motion for summary judgment (Docket No. 61) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge